No.
04-98-00342-CR


Phillip George O'HARA,

Appellant


v.


The STATE of Texas,

Appellee


From the 79th Judicial District Court, Jim Wells County, Texas

Trial Court No. 97-07-09588-CR

Honorable Stan Pemberton, Judge Presiding


Opinion by: Karen Angelini, Justice


Sitting: Catherine Stone, Justice

 Paul W. Green, Justice

 Karen Angelini, Justice 


Delivered and Filed: January 29, 1999


REVERSED AND REMANDED


Nature of the case

 A jury found Phillip George O'Hara guilty of the offense of possession of cocaine and
assessed punishment at two years confinement. In his two issues on appeal, O'Hara alleges that the
court erred in denying his motion to suppress.


 Factual Background

 Trooper Muhler stopped O'Hara because the side marker lamps on his 18-wheeler truck were

not working as required for a commercial motor vehicle. Trooper Muhler approached O'Hara and
told him that he was going to perform an inspection of the truck. When Trooper Muhler inspected
the sleeper portion of the truck, he noticed a suitcase and asked O'Hara what it contained. O'Hara
responded that the suitcase contained papers and denied Trooper Muhler's request to look inside.
At this point, Trooper Muhler told O'Hara to gather his paperwork and they would go to the patrol
car where he would write the inspection report. Trooper Muhler asked O'Hara to leave his belt knife
in the truck. O'Hara complied with the request and followed Trooper Muhler to the patrol car. 

 Trooper Muhler told O'Hara that he was going to allow him to sit in the front seat of the
patrol car, but needed to pat him down first to make sure he did not have any weapons. Trooper
Muhler patted down O'Hara's rear pockets and front right pocket and did not find any weapons.
When Trooper Muhler attempted to pat down O'Hara's front left pocket, O'Hara stepped back and
blocked the pocket with his hands. Trooper Muhler testified that this reaction scared him and made
him believe that the front left pocket contained a weapon. He then handcuffed O'Hara and patted
down the front left pocket. 

 Trooper Muhler testified that he felt a hard metallic object and reached into O'Hara's pocket
to pull the object out. Trooper Muhler pulled out a rolled up plastic bag which contained some
rolling papers, a small electrical "alligator clip," and some marijuana. O'Hara was then placed under
arrest and handcuffed. Trooper Muhler called for back up and began to inventory the truck. When
Trooper Muhler looked back over at O'Hara, O'Hara was using his shoulder to remove his cap.
Trooper Muhler inspected the cap and found a small triangular plastic bag containing a white
powdery substance inside the brim of the cap. Trooper Muhler then looked on the ground around
O'Hara and found six more small triangular bags. The white powdery substance was determined to
be cocaine. 

Motion to suppress

 In his first issue, O'Hara alleges that the court erred in not suppressing the cocaine as the fruit

of an illegal arrest for possession of marijuana because the marijuana was seized in violation of article
1, section nine of the Texas Constitution and the Fourth and Fourteenth Amendments of the United
States Constitution. When the resolution of a suppression issue does not depend on an evaluation
of credibility or demeanor, the court's determination of the law and the application of the law to the
facts is reviewed de novo. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

 O'Hara argues that under the circumstances Trooper Muhler was not authorized to perform
a pat-down search. An officer conducting a weapons search must justify his decision to search with
specific articulable facts which, taken together with rational inferences from those facts, would cause
a reasonably prudent person to believe his safety or that of others was in danger. Terry v. Ohio, 392
U.S. 1, 21-22 (1968). While an officer need not be positive that a person is armed, the specific facts
must amount to more than a mere hunch or suspicion. Id. at 27. The purpose of a limited search for
weapons is not to discover evidence of a crime, but to allow the officer to pursue the investigation
without the fear of violence. Davis v. State, 829 S.W.2d 218, 220 (Tex. Crim. App. 1992) (quoting
Wood v. State, 515 S.W.2d 300, 306 (Tex. Crim. App. 1974)). The Court of Criminal Appeals has
listed some factors to be considered in determining whether a weapons search is justified. The factors
include: (1) flight; (2) furtive gestures and sudden movements toward a pocket where a weapon might
be concealed; (3) threats and attempts to resist detention; (4) the commission of a criminal offense;
and, (5) intoxication. Worthey v. State, 805 S.W.2d 435, 438-39 (Tex. Crim. App. 1991) (citing
Lippert v. State, 664 S.W.2d 712, 721 (Tex. Crim. App. 1984)). 

 O'Hara argues that Trooper Muhler did not testify to any specific articulable facts which
would cause a reasonably prudent person to believe his safety was in danger. Trooper Muhler
testified that for his own safety, he routinely performs a pat-down search to check for weapons before
allowing an individual into his patrol car. Trooper Muhler did not testify that he was afraid of O'Hara
or that he thought he was armed. In fact, during cross-examination at trial, Trooper Muhler testified
that he was not afraid of O'Hara. In a recent opinion, this court pointed to an officer's testimony that
he had no fear of the defendant as a factor in determining that the record was devoid of any specific
and articulable facts which would cause a reasonably prudent person to believe his safety was in
danger. See Matter of A.D.D., 974 S.W.2d 299, 306 (Tex. App.--San Antonio 1998, no pet.). The
State's brief points to the fact that O'Hara had been carrying a knife and that the stop occurred in a
remote location at 3:30 in the morning. However, Trooper Muhler offered no testimony to indicate
that these specific facts caused him to believe his safety was in danger.

 The following cases provide examples of articulable facts that support a protective weapons
search. See Worthey, 805 S.W.2d at 438 (defendant approached house where search warrant was
being executed, officer told her to not move her hands but she moved her right hand and purse away
from the officer's view); Garcia v. State, 967 S.W.2d 902, 906 (Tex. App.--Austin 1998, no pet.)
(dispatch reported that escaped robbers had a rifle and the occupants of the car took five minutes to
emerge from their vehicle); Strickland v. State, 923 S.W.2d 617, 620 (Tex. App.--Houston [1st
Dist.] 1995, no pet.) (nervousness, bulge in pants pocket, and defendant repeatedly attempting to put
hands in his pocket despite officer's warning to remove them); Graham v. State, 893 S.W.2d 4, 7
(Tex. App.--Dallas 1994, no pet.) (startled look on face, reaching under the driver's seat); State v.
Vasquez, 842 S.W.2d 841, 843-44 (Tex. App.--Beaumont 1992, pet. ref'd) (dispatch identified
vehicle as one that was suspected to have been used by gang members in a drive-by shooting earlier
in the day). 

 In Zeno v. State, the State argued that the protective search was for the officer's safety but
the court found that the search was not justified because there was no evidence that the officer had
a reasonable belief, based on an individualized suspicion, that the person was armed. Zeno v. State,
862 S.W.2d 165, 166 (Tex. App.--Houston [1st Dist.] 1993, pet. ref'd). In a recent decision, the
Third Court of Appeals found a pat-down search to be unjustified under facts similar to ours. Sikes
v. State, No. 03-98-00098-CR, 1998 WL 818707 (Tex. App.--Austin Nov. 30, 1998, n pet. h.).
In Sikes, a police officer saw a man stick his hand into a plastic window of a Jeep and then return to
a waiting vehicle. Id. at *1. Believing that a burglary might have occurred, the officer stopped the
vehicle and was told that the Jeep belonged to the man's girlfriend and he had left her a note. The
officer saw some alcohol bottles in the front seat and asked to search the car but the driver refused.
Although the passenger appeared to be intoxicated, the driver did not. Id. The officer assured the
driver that he would not be in trouble for the alcohol and the driver then consented to the search. 

 While the driver and the passenger were standing on the side of the road, the officer asked
them to empty their pockets. The officer then performed a pat-down search of the two men. The
officer testified that he performed the search for officer safety and that he does a pat-down search
whenever he searches a vehicle. Id. During the pat-down, the officer observed a plastic bag in the
defendant's pocket, pulled it out, and found that it contained marijuana. The court of appeals stated
that the evidence showed that the men had been cooperative and had not made any furtive gestures
and there was no evidence that the police saw any suspicious bulges. Id. at *3. Further, when the
officer was asked why he feared for his safety, he answered that a pat-down search was simply a
matter of routine when he searched a vehicle. Id. at *1. The court of appeals stated that
"constitutional protections against unreasonable searches cannot be whittled away by police
regulations or standard operating procedure." Id. at *5. The court found that the officer's
justification of routine did not constitute the specific articulable facts necessary to justify a search.
Id. 

 In this case, Trooper Muhler's only basis for the pat-down search was that it was his routine
to pat-down someone before allowing him into his patrol car. However, as stated by the Austin
Court of Appeals in Sikes, routine does not justify a pat-down search. Therefore, we find no specific
articulable facts to suggest that Trooper Muhler reasonably believed that O'Hara was armed and
dangerous. Thus, we find that the pat-down search was illegal. 

 Further, we find that the cocaine should have been suppressed as the fruit of the illegal search.
See Sossamon v. State, 816 S.W.2d 340, 346 (Tex. Crim. App. 1991) (holding that indirect fruits of
an illegal search should be suppressed). As a result of the pat-down search, Trooper Muhler
discovered marijuana and placed O'Hara under arrest. While under arrest, Trooper Muhler observed
O'Hara playing with his hat and found the cocaine. If O'Hara had not been arrested, Trooper Muhler
would not have discovered the cocaine. Thus, we find that the court erred in failing to suppress the
cocaine as the fruit of an illegal search. We sustain O'Hara's first issue and therefore need not reach
his second issue in which O'Hara alleged that the pat-down search exceeded the scope of a protective
weapons search. 


 We reverse and remand the judgment for proceedings consistent with this opinion.

 Karen Angelini, Justice

PUBLISH